1:20-mj-3253 to -3257 TMD

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND APPLICATIONS FOR SEARCH AND SEIZURE WARRANTS

I, Emily Zagone, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for the issuance of a criminal complaint and arrest warrant against Jean-Luc PIERRE-LOUIS ("PIERRE-LOUIS"), charging him with violations of 18 U.S.C. §§ 871 (Threats to the President and successors to the Presidency) and 875(c)(Interstate Threats) (both occurring on or about and between October 5, 2020 and December 9, 2020) (the "TARGET OFFENSES"), as well as for the issuance of a warrant under Rule 41 of the Federal Rules of Criminal Procedure to search the person of PIERRE-LOUIS, further described in Attachment A1 for the items listed in Attachment B1.

2. This affidavit is also submitted in support of applications for search warrants, pursuant to the Electronic Communications Privacy Act, 18 U.S.C. § 2701 et. seq., to search the contents of the following accounts (together, the "SUBJECT ACCOUNTS"):

   a. **Facebook Accounts:** Records and Information associated with the following Facebook accounts, described in Attachment A2, stored at premises owned, maintained, controlled or operated by Facebook Inc., a business headquartered at 1601 Willow Road, Menlo Park, CA 94025 for the items listed in Attachment B2:

      i. **Baptized ByFire (facebook.com/jay.lawrence.96199)**;

      ii. **Justice Noire (facebook.com/maste.blasta.524)**;

      iii. **Luc Jean (facebook.com/cal.cutta.7161); and,**

      iv. **Jean-Luc Deux (facebook.com/baptized.fiore)**;

   b. **Instagram Account:** Records and Information associated with the Instagram account **Jeanlucpierrelouis**, described in Attachment A3, stored at premises owned,

    maintained, controlled or operated by Facebook Inc., a business headquartered at 1601 Willow Road, Menlo Park, CA 94025 for the items listed in Attachment B3;

  c. **Google Account:** Records and Information associated with the Google account **chicacaca1@gmail.com,** described in Attachment A4; stored at premises owned, maintained, controlled or operated by Google LLC, a business with offices located at 1600 Amphitheatre Parkway, Mountain View, California, 94043, for the items listed in Attachment B4.

  3.  I am a duly appointed Special Agent with the USSS and have been employed as such since June 2017. I have completed the Criminal Investigator Training Program at the Department of Homeland Security's Federal Law Enforcement Training Center, as well as the Special Agent's Training Course through the USSS James J. Rowley Training Center. Prior to serving with the USSS, I served as a Special Agent with the National Security Agency, Associate Directorate for Security and Counterintelligence. Throughout my career in law enforcement, I have become familiar with the methods and techniques associated with financial institution fraud, identity theft, and protective intelligence cases. In the course of conducting investigations, I have incorporated the use of the following investigative techniques: interviewing informants, cooperating witnesses, victims and subjects; physical surveillance and utilization of various surveillance techniques; supporting undercover operations; participating in mobile wireless tracking missions; and preparing and executing search and arrest warrants that have led to seizures of counterfeit currency, access devices, instruments used to commit financial fraud, weapons, and other items of interest to protective intelligence investigations.

  4.  Based on my knowledge, training, and experience in the investigation of threat cases and protective intelligence investigations, I am familiar with the ways in which those who

threaten violence plan and carry out the act of making threats. My familiarity includes the various means and methods by which individuals utilize cellular telephones and social media accounts to relay their intentions to the public. I am also familiar with the ways in which those who commit these crimes are able to do so without detection. As contrasted with financial crimes, which are characterized by ongoing and repeated criminal activity, crimes against persons tend to be discrete offenses.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for issuance of the Criminal Complaint and the requested warrants and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, I submit that there is probable cause to believe that violations of the TARGET OFFENSES, have been committed by Jean Luc- PIERRE-LOUIS. There is also probable cause to believe that evidence, fruits, and instrumentalities of those crimes, as more particularly described in Attachments B1, B2, B3, and B4 will be found within the locations to be searched, which are described more particularly in Attachments A1, A2, A3, and A4.

## THE TARGET OFFENSES

7. Pursuant to 18 U.S.C. § 871, in relevant part, "whoever knowingly and willfully deposits for conveyance… any letter, paper, writing, print, missive, or document containing any threat to take the life of, to kidnap, or to inflict bodily harm upon the President of the United States . . . or knowingly and willfully otherwise makes any such threat against the President . . . shall be fined under this title or imprisoned not more than five years, or both."

8. Pursuant to 18 U.S.C. § 875(c), "[w]hoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years."

## PROBABLE CAUSE

9. GoFundMe is a social fundraising platform that allows individuals or nonprofits to raise money for personal, business, and charitable causes.

10. On December 6, 2020, at approximately 1704 hours, a GoFundMe Compliance Specialist notified the USSS Protective Intelligence Division that the GoFundMe compliance team had identified a fundraiser titled, "Let's Kill Trump" under the link https://www.gofundme.com/f/lets-kill-trump. The organizer was listed on the page as "Jean-Luc Pierre" in "Baltimore, MD". The goal for the fundraiser was listed as "$1,000,000." The description on the page read as follows:

> Trump is an enemy to Democracy and to Humanity.
>
> The vast majority of the World hates him (I.E. EVERY COUNTRY), he legitimately believes he can BUY an Election, with a difference of 7,000,000 votes.
>
> He is instigating Trump supporters to agitation and violence.
>
> This constitutes an act of violence and treason.
>
> It is the CONSTITUTIONAL RIGHT OF AMERICANS to rebel against tyranny.
>
> This is how we are rebelling.
>
> Sharpshooters ready.
> Legal team ready.
> Foreign shooters ready.
>
> *Costs $$$

11. The "Jean-Luc Pierre" GoFundMe account was created on March 5, 2018, and the user provided the email **chicacaca1@gmail.com** as the email address for the page and the location as "21210, US (Baltimore, MD)." The IP address associated with posting the "Let's Kill Trump" solicitation was stated as "107.77.203.38, Alexandria, VA AT&T Wireless December 6 4:13 am." I know based on my training and experience that the association of a generic AT&T Wireless IP address usually means that a mobile device operating on AT&T's wireless data network was used to access a site.

12. A subpoena was served on GoFundMe for the account information for "Jean-Luc Pierre." The account was listed as being first created on March 5, 2018 with the email account **chicacaca1@gmail.com**. On December 6, 2020, the user tied the number 240-281-7884 to the account for multi-factor authentication. That day, the user successfully verified access to the account using multi-factor authentication.

13. A subpoena was served on Google for account **chicacaca1@gmail.com**. The returns stated the email address has account ID #440519998353 and the user provided name "Gray Ghost." The account was created on June 18, 2019 and had logins into the email account as recently as November 26, 2020. The majority of the logins were associated with generic AT&T mobile IP addresses, which AT&T cannot associate with individual subscribers. One of the IP addresses used to access the account on April 30, 2020, was assigned to the Enoch Pratt Free Library in Baltimore, Maryland.

14. A subpoena was served on AT&T for phone number 240-281-7884. The subscriber from March 17, 2020 to present is a prepaid customer listed as "Jean Pierre Luis," with the user-provided address of an AT&T retail store, 12023 Rockville Pike, Rockville, MD 20852, as the

address. On March 17 and May 2, 2020, the account was paid for using a credit card in the name of "Raynald Pierrelouis."

15. Investigators identified Jean-Luc Pierre as being Jean-Luc PIERRE-LOUIS, a male who is 38 years of age. He is a Haitian citizen and lawful permanent resident of the United States. Open source research identified "Jean-Luc Pierre Louis" on LinkedIn, where he was listed as a "Finance Consultant" at "Associated Professionals of Washington, L.L.C." and an alumnus of Loyola University of Maryland. According to information in databases available to investigators, "Raynald" is the name of PIERRE-LOUIS's father.

16. Investigators have also identified the publicly visible Instagram account "**jeanlucpierrelouis**" which includes pictures matching the description of PIERRE-LOUIS. The user of the account self-identified as an alumnus of Loyola University of Maryland and posted several pictures with a location tag in Rockville, MD. Further, open source research identified Pinterest user "chicacaca1" as "Jean-Luc Deux."

17. Investigators also located the publicly available Facebook account "**Baptized by Fire" (facebook.com/jay.lawrence.96199)** that appeared to be used by PIERRE-LOUIS. The account nickname is "Jean-Luc Pierre Louis" and the profile picture displayed by the user matches the picture of PIERRE-LOUIS obtained from the Maryland Motor Vehicle Administration. The user of the account claims to be a graduate of the Loyola University Maryland class of 2004.

18. A series of recent public posts on the "Baptized by Fire" Facebook account discussed President Donald Trump and possible violence:

    a. On November 20, 2020, the user posted under a picture of President Donald Trump, "We HAVE to give this guy a PROPER Disney villain ending. So that future generations feel justified and at PEACE when they hear of his madness and shame."

b. On November 11, 2020, the user posted a picture of President Donald Trump with a hand-drawn rifle scope covering his face, and a statement that "he is TRESPASSING on Government property. That property BELONGS to the American People… In America, anyone who trespasses on your PROPERTY CAN BE SHOT."




c. On November 9 and again on November 11 and November 19, 2020, the user posted their location as "Washington D.C. at The White House."

    d.   On November 10, 2020, the user posted, "Mr. Trump… Take your money and go. I am done with you… for now. (Don't let Melania see this.) *TRUST ME.*" He later posted, "I am coming. Expect me."

    e.   On October 5, 2020, the user posted a picture of two AR-15- style rifles. He also posted a picture of First Lady Melania Trump with the caption, "I make grave for husband."



    19.   A second Facebook account, **"Justice Noire" (facebook.com/maste.blasta.524)**, also appeared to be used by PIERRE-LOUIS. The profile picture for this account, and pictures posted by the account also appear to depict PIERRE-LOUIS, as shown in his MVA photo.

    20.   On December 6, 2020 at 7:37 a.m., **Justice Noire** published a post which included a screenshot of the GoFundMe page entitled, "Let's Kill Trump", about three hours after the page had been created:



21.     The user posted on December 9, 2020, "The Cavalry's on the way" with their location as "Washington D.C., The White House." He also posted that day, "I'm taking the killshot. Everyone agrees." The user created dozens of posts that day about opposition to law enforcement and claimed to be at the White House and the Republican National Committee Headquarters.



22. Investigators also identified the Facebook accounts **Jean-Luc Deux (facebook.com/baptized.fiore)** and **Luc Jean (facebook.com/cal.cutta.7161)** as belonging to PIERRE-LOUIS, based on the pictures used and posts made on his other accounts.

1:20-mj-3253 to -3257 TMD

23. On October 18, 2020, the **Jean Luc Deux** account was used to post, "FBI: Here's some GOOD NEWS FOR YOU. YOU ARE NOT MY PRIMARY TARGET!!!!" On December 28, 2020, the user of this account posted their location as "FBI- Federal Bureau of Investigation, Washington D.C."

24. On December 17, 2020, the **Luc Jean** account was used to make the following post:



25. On December 23, 2020, PIERRE-LOUIS made the following post using the **Luc Jean** account, claiming to be "at" the U.S. Secret Service and being involved with a group monitoring President-Elect Joe Biden's motorcades:

1:20-mj-3253 to -3257 TMD



26. Based on my training and experience and discussions with other law enforcement officers, I know that persons committing or intending to commit threat-related offenses often utilize computers, data storage devices, and other electronic communications equipment, including

cellular telephones, to search the internet, to store plans and conduct research related to attacks or threat-related activities, and to communicate and transmit threats to recipients of threat-related activities. They also access social media platforms, email accounts, and other cloud-based services and applications used to engage in such research, planning, and operational activities using electronic communications equipment.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

27. As described above and in Attachment B1, this application seeks permission to search for records that might be found on PIERRE-LOUIS's person, in whatever form they are found. One form in which the records might be found is data stored on a digital device, such as a mobile phone, a computer's hard drive, or other storage media such as hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media. Thus, the warrants applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

28. *Probable cause.* I submit that if a computer or storage medium is found on PIERRE-LOUIS's person, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

   b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are

      overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

    d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

29. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium on PIERRE-LOUIS's person, because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

    b. Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant

  messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

30. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises

        could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

    b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

    c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

31. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrants I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrants, and would authorize a later review of the media or information consistent with the warrants. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrants.

## FACEBOOK

32. Facebook is a free social networking website that provides a host of services to its users. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. Facebook users can post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. A particular

user's profile page includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links.

33. Facebook has a Photos application, where users can upload images and videos. Another feature of the Photos application is the ability to "tag" (i.e., label) other Facebook users in a photo or video. For Facebook's purposes, a user's "Photoprint" includes all photos uploaded by that user that have not been deleted, as well as all photos uploaded by any user that have that user tagged in them.

34. Facebook users can exchange private messages with one another. These messages, which are similar to email messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

35. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook also has a Marketplace feature, which allows users to post free classified ads, including items for sale, housing, jobs, and the like.

## INSTAGRAM

36. Instagram is an online mobile photo-sharing, video-sharing, and social networking service that enables its users to take pictures and videos, and share them either publicly or privately on the app, as well as through a variety of other social networking platforms, such as Facebook,

Twitter, Tumblr, and Flickr. Instagram has no set limit on the amount of data a user uploads to Instagram.

## GOOGLE ACCOUNT

37. Google provides numerous free services to the users with a Google account. Some of services include, Gmail, YouTube, Voice, Blogger, Google+, Android, Photos, Drive, Location History, and Search and Browsing History. Gmail is a web based email service. YouTube is a free video sharing website that allows users upload, view and share videos. Voice is Google's calling, voicemail transcription, and text messaging service. Blogger is Google's free weblog publishing tool for sharing text, photos, and video. Google+ is a forum to share photos, videos, and other information with other users. Android is Google's open source operating system used for mobile devices. Photos stores images for a broad range of Google products. Drive is Google's online storage service for a wide range of file types.

## CONCLUSION

38. Based on the foregoing, I respectfully submit that there is probable cause to believe that on or about and between October 5, 2020 and December 9, 2020, PIERRE-LOUIS committed violations of the TARGET OFFENSES. I request that a criminal complaint, arrest warrant be issued, as prayed.

39. I further submit that there is probable cause to believe that contraband, and evidence, fruits, and instrumentalities of violations of the TARGET OFFENSES, as set forth herein and in Attachments B1, B2, B3, and B4, are currently located in the locations and accountS more fully described in Attachments A1, A2, A3, and A4. I therefore respectfully request that search warrants be issued authorizing a search of PIERRE-LOUIS and the SUBJECT ACCOUNTS, described in Attachments A1, A2, A3, and A4 for the items described above and in

Attachments B1, B2, B3, and B4, and authorizing the seizure and examination of any such items found therein.

40. I anticipate executing the warrant to search the SUBJECT ACCOUNTS under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook and Google to disclose to the government copies of the records and other information (including the content of communications) particularly described in Attachments A3, and A4. Upon receipt of the information described in Attachments B2, B3, and B4, government-authorized persons will review that information to locate the items described in the Attachment.

41. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

42. Because the warrant will be served electronically on Google who will then compile the requested records at a time convenient to them, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____
Emily Zagone
Special Agent
U.S. Secret Service

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4(d), 4.1 and 41(d)(3) this __29__ day of December, 2020

_____
The Honorable Thomas M. DiGirolamo
United States Magistrate Judge